UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| LKIMMY, Inc., <br><br> Plaintiff, <br><br> v. <br><br> BANK OF AMERICA, et al. <br><br> Defendants. | Case No. 2:20-cv-02184-RFB-VCF <br><br><br> **ORDER** |

## I.  INTRODUCTION

Before the Court is Plaintiff's Second Motion to Remand. ECF No. 54. For the reasons stated herein, the motion is **GRANTED**.

## II.  RELEVANT PROCEDURAL BACKGROUND

On September 12, 2019, Plaintiff LKimmy filed its first complaint against Defendant Bank of America, N.A. ("BANA") in Nevada state court. BANA removed the case and filed a motion to dismiss. Judge Mahan granted the motion without prejudice under FRCP 12(b)(6).

On October 16, 2020, LKimmy filed a second complaint against BANA in Nevada state court. This time, LKimmy added another defendant – Julius Kim – a non-diverse, forum defendant, to the case. LKimmy served BANA with the summons and Second Complaint on November 6, 2020. ECF No. 1-5. On November 30, 2020, BANA removed the Second Complaint to this Court. ECF No. 1. At the time of removal, Julius Kim had not yet been served with summons and the Second Complaint.

On December 7, 2020, BANA filed a Motion to Dismiss. ECF No. 4. On December 14, 2020, LKimmy filed its first Motion to Remand. ECF No. 5. BANA responded on January 5, 2021, ECF No. 20, and LKimmy replied on January 26, 2021, ECF No. 33. On January 16, 2021, LKimmy served Julius Kim with a state court summons. ECF No. 30. On June 29, 2021, Julius

Kim filed for Chapter 7 bankruptcy.

On July 28, 2021, LKimmy filed a Motion for Summary Judgment. ECF No. 37. BANA responded on September 1, 2021. ECF No. 43. On September 3, 2020, this Court held a hearing on the first motion to remand. Subsequently, the Court permitted the parties to submit additional briefing regarding remand, to address LKimmy's delayed service on Julius Kim. ECF No. 44. The Court also instructed BANA to refile its Motion to Dismiss as a Motion for Summary Judgment. LKimmy and BANA both provided supplemental briefing on the remand issue. ECF Nos. 45, 47. BANA refiled its Motion to Dismiss as a Motion for Summary Judgment, ECF No. 46.

On September 28, 2021, the Court held a second hearing and denied LKimmy's first motion to remand, but permitted Plaintiff to file a second motion to remand. ECF No. 53. The Court also noted that it would permit the parties to file a stipulation to modify the briefing schedule regarding the parties' pending motions for summary judgment. Id. On September 30, 2021, the Court granted a stipulation to modify the briefing schedule. ECF No. 55.

The Court held a hearing on the second motion to remand on February 23, 2022. ECF No. 60. This order follows.

### III.   FACTUAL ALLEGATIONS

The following allegations are derived from Plaintiff's state court complaint. ECF No. 1-1.

Plaintiff LKimmy is an e-commerce business that sells its lighting and photography equipment on Amazon. On November 10, 2018, Plaintiff entered into an Exclusive License Agreement ("ELA") with Eachpole, Inc. ("Eachpole"). Eachpole's president is Defendant Il Kim (aka Julius Kim). Pursuant to the ELA, Plaintiff purchased the exclusive licensing rights from Eachpole and Kim to the Amazon market IDs of "KimOutlet" and "Eachpole." Using these market IDs, Plaintiff began to successfully sell its photography and lighting equipment on Amazon.

Unbeknownst to Plaintiff, Eachpole and Defendant Kim owed money to Defendant BANA arising from Kim's alleged breach of a loan agreement claim. To deal with the debt owed to BANA, Defendant Kim contacted BANA and wrongfully informed BANA that the monies related to the "KimOutlet" and "Eachpole" market IDs on Amazon belonged to Eachpole.

Beginning March 30, 2019, Defendant BANA contacted Amazon, claiming an interest in the "KimOutlet" and "Eachpole" market IDs and all sales generated from products sold under these market IDs. In response, Amazon froze the market IDs of "KimOutlet" and "Eachpole," pursuant to its policy of not getting involved in disputes between vendors related to market IDs. Due to the freeze, Plaintiff could no longer access funds and inventory related to these market IDs, nor could Plaintiff continue to sell product under these IDs. Upon investigation, Plaintiff learned that Defendant BANA had initiated a lawsuit against Eachpole, Inc. and Defendant Kim as debtors, due to Kim's alleged breach of a loan agreement claim.

Plaintiff alleges that Defendant BANA tortiously, willfully, and negligently caused the freezing of Plaintiff's Amazon accounts when it contacted Amazon to demand that all monies from the "KimOutlet" and "Eachpole" market IDs be paid to Defendant BANA. Plaintiff also alleges that Defendant Kim was "complicit" in BANA's wrongdoing. Plaintiff alleges that Kim, "in a desperate attempt to mitigate the monies owed to Defendant BANA," contacted Defendant BANA and "wrongfully informed BANA that the monies related to the market IDs belonged to Eachpole, Inc.," despite knowing that he had entered into an ELA over the market IDs with Plaintiff. Plaintiff alleges the freezing of the Amazon accounts "catastrophically diminished and degraded Plaintiff's product rankings in Amazon's online marketplace," causing a significant decline in product sales.

### IV.  LEGAL STANDARD

Under 28 U.S.C. § 1332, a federal district court has "original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different States." 28 U.S.C. § 1332(a)(1).

When diversity jurisdiction exists under 28 U.S.C. § 1332 but the matter was filed in a state court, the matter may be removed under 28 U.S.C. § 1441(b). However, the forum-defendant rule in § 1441(b)(2) places limitations on removal. Under the forum defendant rule, "a civil action otherwise removable solely on the basis of the jurisdiction under § 1332(a) . . . may not be removed if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." 28 U.S.C. § 1441(b)(2).

"If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c). Further, "[i]f after removal the plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction, the court may deny joinder, or permit joinder and remand the action to the State court." Id. at § 1447(e).

## V.     PARTIES' ARGUMENTS

Plaintiff argues that this matter should be remanded to state court because Defendant BANA improperly removed the case under 28 U.S.C. § 1441(b). Plaintiff notes that the basis for removal was diversity jurisdiction and argues that diversity jurisdiction did not exist at the time of removal. Because it is uncontested that Plaintiff LKimmy and Defendant Julius Kim are both Nevada residents, Plaintiff argues that the requirement that Plaintiff and Defendants be "citizens of different States" is not met, and diversity jurisdiction was not established at the time BANA removed the case.

Because BANA filed its Petition for Removal prior to service of the non-diverse defendant, Julius Kim, Plaintiff also argues Defendant is impermissibly attempting to "snap remove" this case prior to service. Plaintiff cites to Trotta v. URS Federal Services, 532 F. Supp. 3d 985 (D. Haw. Apr. 2, 2021), in which a Hawaii resident Plaintiff sued two out-of-state corporations and two individual Defendants who were Hawaii residents. Plaintiff notes that in Trotta, like here, the foreign corporations were served with process before the individual forum defendants were served, and the foreign corporations removed the case before service on the forum defendants was completed. Plaintiff argues that this Court should follow the lead of the district court in Trotta, which remanded the case to state court on the finding that the corporations improperly attempted to *create* diversity jurisdiction through the snap removal process. Plaintiff emphasizes that in Trotta, the district court found that snap removal cannot be a basis for jurisdiction, and that the status of service is irrelevant where there is not diversity jurisdiction from the face of the complaint itself.

Plaintiff also argues that Julius Kim was a properly joined defendant, and rejects Defendant's suggestion that Kim is a sham defendant. Plaintiff contends the complaint pleads direct and distinct claims against Kim, by alleging that Kim contacted BANA and wrongfully informed BANA that the market IDs belonged to Eachpole, despite knowing that the market IDs were being used by Plaintiff, and by alleging that Kim was complicit in BANA's actions. Plaintiff argues that BANA's fraudulent defendant argument fails to satisfy the clear and convincing evidentiary standard.

Finally, Plaintiff argues remand is mandatory because Defendant's notice of removal was defective. Plaintiff argues that all defendants in an action filed in state court must join in the notice of removal for removal to be proper, and that because Kim has not joined in the notice of removal, the case must be remanded.

Defendant BANA argues it has satisfied its burden of demonstrating diversity jurisdiction. BANA argues the Court had diversity jurisdiction at the time of removal, because the amount in controversy exceeds $75,000, Plaintiff LKimmy is a Nevada corporation, and Defendant BANA is a North Carolina corporation. Defendant argues that Kim's alleged Nevada citizenship did not destroy diversity of citizenship at the time BANA filed its Notice of Removal, because Kim was a fraudulently joined defendant. BANA notes that fraudulent joinder may be proven by the inability of the plaintiff to establish a cause of action against the non-diverse party in state court, by clear and convincing evidence, and argues that the Second Complaint makes only passing references to Julius Kim, which are insufficient to state a claim for relief. BANA contends that none of the allegations against Kim make out a claim for (1) intentional interference with contractual relations; (2) intentional interference with prospective economic advantage; (3) business disparagement; (4) negligence; and/or (5) injunctive relief. BANA argues that Plaintiff makes only the unsupported and conclusory allegation that Kim was "complicit" in BANA's conduct; this allegation, standing alone, is not sufficient to satisfy the pleading requirement for concert of action.

BANA further argues that Plaintiff's failure to seek default judgment against Kim reveals its intent to fraudulently join Kim. BANA notes that LKimmy did not serve Kim until January 16, 2021, only after BANA had pointed out the lack of service in its response to Plaintiff's first motion

to remand. Even then, BANA argues, Plaintiff served Kim with insufficient state court summons that was rendered null and void upon BANA's filing of a notice of removal. Moreover, LKimmy has never obtained or sought to obtain a default judgment against Kim, despite Kim's failure to appear and respond to the complaint. BANA argues it is clear that Plaintiff never intended to serve Kim or take any action against him because Plaintiff anticipated Il Kim would be filing for bankruptcy.

Next, BANA argues that Kim was not served at the time of removal. Thus, BANA argues, under the plain language of 28 U.S.C. § 1441(b)(2), which bars removal where any of the parties properly joined and served as defendants are citizens of the forum state, does not apply here. BANA argues that Courts have explained that the "joined and served" language exists to prevent a plaintiff from blocking removal by joining as a defendant a resident party against whom it does not intend to proceed, and whom it does not serve; BANA contends that this is the case here. BANA argues this case is different from typical "snap removal" cases that this district has rejected. In those cases, BANA contends, removal occurred prior to *any* defendant having been served; here, by contrast, BANA filed its notice of removal *after* it was served, but before Julius Kim was served. BANA argues that the underlying policy of rejecting snap removal thus does not apply in this case.

Finally, BANA refutes plaintiff's suggestion that removal was defective simply because Kim did not consent to removal. BANA acknowledges that the "rule of unanimity" generally requires that all defendants to an action consent to removal, Chicago, Rock Island & Pac. Ry. Co. v. Martin, 178 U.S. 245, 248 (1900), but argues that this rule does not apply to unserved defendants, and unserved defendants cannot consent to removal. BANA argues that on its face, 28 U.S.C. § 1446(b)(2)(A) provides only that "defendants who have been properly joined and served must join in or consent to the removal of the action." BANA argues that, consistent with the plain language of § 1446(b)(2)(A), the Ninth Circuit has held that unserved defendants are not required to join in or consent to removal. Baiul v. NBC Sports, 732 Fed. App'x 529, 530-31 (9th Cir. 2018).

### VI.     ANALYSIS

6

The Court begins with the removal statute. It is well established that federal courts are courts of limited jurisdiction and have subject matter jurisdiction only over matters authorized by the Constitution and Congress. See Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994). Under 28 U.S.C. § 1441(a), a defendant may remove a suit filed in state court to federal court only if the federal court would have had original jurisdiction over the suit at the start of the action. Thus, if suit is removed on the basis of diversity jurisdiction (as is the case here), the requirements of diversity jurisdiction must be met. Diversity jurisdiction requires that the matter in controversy exceed the sum or value of $75,000, and be between citizens of different States or between citizens of a State and citizens or subjects of a foreign state. 28 U.S.C. § 1332(a)(1)-(a)(2). The Court finds that removal was improper in this instance because BANA has not met its heavy burden to establish that Julius Kim – the non-diverse defendant in this action – was a fraudulently joined defendant, such that complete diversity of parties existed.

"[T]he party invoking federal court jurisdiction on the basis of fraudulent joinder bears a 'heavy burden' since there is a 'general presumption against fraudulent joinder.'" Weeping Hollow Ave. Trust v. Spencer, 831 F.3d 1110, 1113 (9th Cir. 2016) (quoting Hunter v. Phillip Morris USA, 582 F.3d 1039, 1046 (9th Cir. 2009)). Fraudulent joinder must be proven by "clear and convincing evidence." Hamilton Materials Inc. v. Dow Chem. Corp., 494 F.3d 1203, 1206 (9th Cir. 2007). "There are two ways to establish fraudulent joinder: (1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court." GranCare, LLC v. Thrower, 889 F.3d 543, 548 (9th Cir. 2018) (quotations omitted). "If there is a possibility that a state court would find that the complaint states a cause of action against any of the resident defendants, the federal court must find that the joinder was proper and remand the case to the state court." Id. at 548.

When deciding a remand motion where fraudulent joinder is alleged, a court must evaluate the facts alleged in the light most favorable to the plaintiff, resolving all contested issues of fact in favor of the plaintiff. See Albi v. St. & Smith Publ'ns, 140 F.2d 310, 312 (9th Cir. 1944) ("In borderline situations, where it is doubtful whether the complaint states a cause of action against the resident defendant, the doubt is ordinarily resolved in favor of the retention of the cause in the

state court."); see also Travis v. Irby, 326 F.3d 644,649 (5th Cir. 2003). "Federal courts in this circuit apply the fraudulent-joinder rule in cases only where it is indisputably clear that the plaintiff states no cause of action against the non-diverse defendant." Thomas v. Aetna Health of Cal., Inc., No. 1:10-cv-01905-AWI-SKO, 2011 U.S. Dist. LEXIS 59377, *15 (E.D. Cal. June 2, 2011) (emphasis added) (collecting cases).

Defendant BANA does not allege that LKimmy has perpetrated actual fraud in the pleading of jurisdictional facts. Instead, BANA argues there is no possibility that a state court could find that the complaint states a cause of action for any of the claims alleged – (1) intentional interference with contractual relations; (2) intentional interference with prospective economic advantage; (3) business disparagement; (4) negligence; and/or (5) injunctive relief.

As a preliminary matter, the Court acknowledges that Defendant Kim is not mentioned in the factual allegations pertaining to any of these distinct counts. Instead, only Defendant BANA's alleged conduct is mentioned. For instance, with respect to the claim for intentional interference with contractual relations, LKimmy alleges that "Defendant, BANA, knowingly and intentionally disrupted and interfered with Plaintiff's contractual relations with Amazon and the customers that purchased the merchandise from Plaintiff through the 'KimOutlet' and 'Eachpole' market IDs on the Amazon website." LKimmy further alleges that only "Defendant, BANA's, actions were oppressive, willful, and intentional, or done with reckless disregard of the consequences thereof . . . ." Defendant Kim is not named with respect to this cause of action. Each of the other claims follow suit, alleging specific conduct only with respect to BANA. However, the Court finds that specific allegations are made of Defendant Kim in the section of Plaintiff's complaint titled "General Allegations Common to All Causes of Action." There, four specific allegations are made as to Defendant Kim. First, Plaintiff alleges that

> [I]n a desperate attempt to mitigate the monies owed to Defendant, BANA, pursuant to Eachpole, Inc.'s alleged breach of the loan agreement, which was personally guaranteed by Defendant, Kim, contacted Defendant, BANA, and wrongfully informed Defendant, BANA, that the monies related to the 'KimOutlet' and 'Eachpole' market IDs on the Amazon website allegedly belonged to Eachpole, Inc.

Second, Plaintiff alleges that Kim "therefore, was complicit in the actions of Defendant, BANA." Third, Plaintiff alleges that "[t]he actions of Defendant, BANA, and Defendant, Kim, have caused irreparable harm to Plaintiff's business." Fourth, Plaintiff alleges that "[t]he actions of Defendant, BANA, and Defendant, Kim, have actually and proximately caused Plaintiff's continued damages in an amount in excess of $15,000.00." Finally, Plaintiff also generally alleges that "[t]he acts of each Defendant were qualified and were ratified by each other Defendant and together constitute a single course of conduct."

Turning to the claims alleged, the Court first finds that, construing the facts alleged in the light most favorable to LKimmy, Plaintiff does plausibly state a claim under Nevada state law for intentional interference with contractual relations. To establish intentional interference with contractual relations under Nevada state law, a plaintiff must show: "(1) a valid and existing contract; (2) the defendant's knowledge of the contract; (3) intentional acts intended or designed to disrupt the contractual relationship; (4) actual disruption of the contract; and (5) resulting damage." J.J. Indus., LLC v. Bennett, 71 P.3d 1264, 1267 (Nev. 2003). With respect to the first and second prongs, the Court recognizes that Plaintiff does not explicitly allege that Defendant Kim knew of an existing contract between Amazon and LKimmy. However, Plaintiff *does* allege that Defendant Kim and LKimmy entered into an ELA so that LKimmy could sell its products on Amazon using Eachpole's Amazon market IDs. Construing this allegation in the light most favorable to Plaintiff, it may be inferred that Defendant Kim knew that Plaintiff entered into a valid and existing contract with Amazon to sell product under the "Eachpole" and "KimOutlet" Amazon market IDs. With respect to the third prong, the Court finds that Plaintiff has sufficiently alleged that Kim took actions that were "intended or designed to disrupt the contractual relationship" between Plaintiff and Amazon. Bennett, 71 P.3d at 1267. Importantly, the Nevada Supreme Court has stated that the "intent" requirement of this element does not require a showing of specific intent to hurt the plaintiff or "malevolent spite" by defendant – rather, it requires only that the defendant "desires to bring [the interference] about" or "knows that the interference is certain or substantially certain to occur as a result of his action." Las Vegas-Tonopah-Reno Stage Lines v. Gray Line Tours, 792 P.2d 386, 388-89 (Nev. 1990) (emphasis added). Plaintiff's

9

allegations satisfy this standard. Plaintiff alleges that Defendant Kim was in debt to Defendant, BANA, and "in a desperate attempt to mitigate the monies owed to Defendant, BANA," informed BANA that the monies related to the Amazon market IDs – which, at that point, were under the exclusive control of Plaintiff – belonged to Defendant Kim's company, Eachpole. Construing this allegation in the light most favorable to Plaintiff, the Court finds that Defendant Kim, by representing to BANA that it owned the monies related to the Amazon market IDs, would have known that an interference with the contract between LKimmy and Amazon related to those market IDs would be certain or substantially certain to occur. Finally, with respect to the last two prongs, the Court finds that the complaint sufficiently alleges that the actions of Defendant Kim led to actual disruption of the contract between Amazon and LKimmy, causing damage to Plaintiff. The complaint alleges that because Kim represented to BANA that Eachpole owned all monies tied to the Amazon market IDs, BANA contacted Amazon claiming an interest in the IDs, and that Amazon, in turn, froze the market IDs. The complaint further alleges that the freezing of these IDs caused Plaintiff tangible harm – including that Plaintiff was unable to conduct further sales under the market IDs, and was also unable to access its own inventory and funds received from its earlier sales under the market IDs.

The Court is also mindful that the Ninth Circuit has held that a district court, in determining whether there is "no possibility" that a state court would find that the complaint states a cause of action against the non-diverse defendant, "must consider . . . whether a deficiency in the complaint can possibly be cured by granting the plaintiff leave to amend." GranCare, LLC v. Thrower, 889 F.3d 543, 549-550 (9th Cir. 2018). The Ninth Circuit has explicitly stated that the standard for fraudulent joinder is more exacting on the party seeking to establish fraudulent joinder than the Rule 12(b)(6) standard would be for a party seeking to dismiss a complaint for failure to state a claim:

> A standard that equates fraudulent joinder with Rule 12(b)(6) conflates a jurisdictional inquiry with an adjudication on the merits. Because the purpose of the fraudulent joinder doctrine is to allow a determination whether the district court has subject matter jurisdiction, the standard is similar to the "wholly insubstantial and frivolous" standard for dismissing claims under Rule 12(b)(1) for lack of

federal question jurisdiction. . . . The relative stringency of the standard accords with the presumption against removal jurisdiction, under which we "strictly construe the removal statute," and reject federal jurisdiction "if there is any doubt as to the right of removal in the first instance."

Id. (emphasis added) (internal citations omitted).

In this case, the Court does not find that Plaintiff's claims against Defendant Kim are "wholly insubstantial and frivolous." Id. To the contrary, the Court finds that Plaintiff has shown a possibility of establishing a claim for intentional interference with contractual relations under Nevada state law, particularly if granted leave to amend to more explicitly state that Defendant Kim knew of a contract between Plaintiff and Amazon.

Having identified at least one potentially valid claim against Defendant Kim, the Court need not examine the other claims in the state court complaint to conclude that BANA has failed to demonstrate fraudulent joinder here.[1] Knutson v. Allis-Chalmers Corp., 358 F. Sup. 2d 983, 993 (D. Nev. Feb. 23, 2005) ("In order to establish that there has been no fraudulent joinder, a plaintiff

---

[1] The Court also rejects any suggestion by Defendant BANA that removal is proper under 28 U.S.C. § 1441(b)(2). That statute provides that "a civil action otherwise removable solely on the basis of the jurisdiction under § 1332(a) . . . may not be removed if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." 28 U.S.C. § 1441(b)(2). Defendant argues that the "joined and served" language exists to prevent a plaintiff from blocking removal by joining as a defendant a resident party against whom it does not intend to proceed, and that this logic should apply here, because LKimmy never intended to proceed against non-diverse defendant Julius Kim. The Court finds § 1441(b)(2) to be irrelevant to the instant case. That statute sets forth the forum defendant rule, which "confines removal on the basis of diversity jurisdiction to instances where no defendant is a citizen of the forum state." Lively v. Wild Oats Mkts., Inc., 456 F.3d 933, 939 (9th Cir. 2006). The purpose of diversity jurisdiction is to "protect out-of-state defendants from possible prejudices in state court." Id. at 940. Where the defendant is a resident of the state in which the case is bought, and the case is otherwise removable due to diversity of the parties, "the need for such protection is absent." Id. Thus, the forum defendant rule prevents local defendants from removing on the basis of diversity jurisdiction, "allow[ing] the plaintiff to regain some control over forum selection by requesting that the case be remanded to state court" on the ground that the defendant is a resident of the forum and thus not prejudiced by state court jurisdiction. Id. Here, the factual predicates and logic undergirding the forum defendant rule simply do not apply. The defendant seeking removal – here, BANA – is not a local defendant. And the local defendant in this action – Julius Kim – does not seek removal, such that the forum defendant rule would apply.

need only have one potentially valid claim against a non-diverse defendant." (first citing <u>Gray v. Beverly Enterprises-Mississippi, Inc.</u>, 390 F.3d 400 (5th Cir. 2004), then citing <u>Cabalceta v. Standard Fruit Co.</u>, 883 F.2d 1553, 1561 (11th Cir. 1989))).

In conclusion, the Court finds that Defendant BANA has not met its burden of demonstrating, by clear and convincing evidence, that it is "obvious according to the settled rules of the state" that LKimmy has no cause of action against Julius Kim. As such, the Court does not find that Julius Kim was a fraudulently joined defendant at the time Defendant BANA filed its Petition for Removal. Because Julius Kim was properly joined at the time, complete diversity of citizenship was not established, and the Court therefore has no subject matter jurisdiction over this action. <u>See</u> 28 U.S.C. § 1332(a).

### VII.   CONCLUSION

**IT IS THEREFORE ORDERED** that the [54] Second Motion to Remand to State Court by Plaintiff LKimmy, Inc. is **GRANTED.**

**IT IS FURTHER ORDERED** that this matter is remanded back to Nevada's Eight Judicial District Court.

**IT IS FURTHER ORDERED** that the [46] Motion for Summary Judgment is **DENIED** as moot.

DATED: March 16, 2022.

_____
**RICHARD F. BOULWARE, II**
**UNITED STATES DISTRICT JUDGE**